# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Criminal No. 08-178 (DSD / SRN)

               Plaintiff,

                                    **REPORT AND RECOMMENDATION**

    v.

Dino Cruz-Cruz (1), and
Mario Maya-Villa (2),

               Defendants.

---

David P. Steinkamp, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for U.S.A.

Stephen W. Walburg, 206 Scott Street, Shakopee, MN 55415, for Defendant Maya-Villa.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendant Maya-Villa's various dispositive motions:  Motion to Suppress Evidence as a Result of Search and Seizure and Unlawful Arrest (Doc. No. 20), Motion for Suppression of Confessions or Statements in the Nature of Confessions (Doc. No. 21), and Motion for Severance of Defendants (Doc. No. 38).  The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a).  For the reasons stated below, this Court recommends that the motions be denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Defendants have been indicted for conspiracy to distribute cocaine and distribution of cocaine.  (Doc. No. 14.)  Maya-Villa now presents several dispositive as well as non-dispositive motions.[1]

---

[1]  The Court has addressed Defendant's non-dispositive motions in a separate Order.

Based on information from a cooperating defendant, Sergeant Randall Olson of the Minneapolis Police Department opened an investigation into alleged drug trafficking by Dino Cruz-Cruz.[2] On May 12, 2008, an undercover officer met with Cruz-Cruz and asked to buy a kilogram of cocaine. At the place established for the controlled buy, Cruz-Cruz and Maya-Villa arrived together in a red Escalade that Maya-Villa was driving. Cruz-Cruz entered the undercover officer's vehicle and they negotiated a purchase price, but Cruz-Cruz told the officer he could not then deliver the cocaine and would have to call him back when he could. Cruz-Cruz then returned to the Escalade and the two departed under surveillance. Maya-Villa dropped Cruz-Cruz off at Chicago Avenue South and 37th Street, and Cruz-Cruz departed in a gold Chrysler Concord. The surveilling officers split up so as to be able to continue their surveillance of both vehicles. Over an hour later, Maya-Villa and Cruz-Cruz met again and drove the Concord to an apartment building at 3720 Minnehaha Avenue South and parked in the rear lot.

After a while another officer observed Maya-Villa exit a third-floor apartment of that building, an apartment that officers later determined to be Apartment No. 14. Maya-Villa descended a rear stairwell and stood at the rear door to the apartment building, where he was met by Cruz-Cruz, who had been waiting in the Concord. The two then walked up that stairwell and entered Apartment No. 14. Cruz-Cruz then contacted the undercover officer, telling him that he had possession of the cocaine the officer wanted to buy and they arranged to complete the transaction at a car wash about four blocks away at Hiawatha Avenue and 42nd Street.

The officer monitoring the apartment building then observed Maya-Villa, Cruz-Cruz and two other individuals leave the apartment, and exit the rear door of the building. Maya-Villa and Cruz-Cruz left in the Concord and the other two left in a Volkswagen and both vehicles drove

---

[2] Sgt. Olson testified at the August 8, 2008, hearing in this matter.

directly to the car wash and parked in the lot.

After the undercover officer arrived in the car wash parking lot, Cruz-Cruz entered the officer's vehicle and asked to see the cash.  The undercover officer then asked to see the cocaine before paying for it.  Maya-Villa got out of the Concord, walked over to the Volkswagen where he retrieved a shoebox, and then returned to the Concord, placing the shoebox in the rear seat of that vehicle.  After the undercover officer approached the Concord and observed what appeared to be cocaine inside that container, he gave the signal to move in and arrest the suspects.  Officers placed all four under arrest.

A search of Maya-Villa incident to his arrest disclosed a set of keys.  One of those keys opened the lock to the door of Apartment No. 14 at 3720 Minnehaha Avenue South.  Sgt. Olson then obtained a warrant to search that apartment.  A search of those premises executed by Sgt. Olson disclosed numerous items of evidentiary value.

## II.    DISCUSSION

Only the motion to suppress physical evidence remains at issue.[3]  Defendant moves to suppress any physical evidence obtained as a result of a search and seizure, contending that (1) any searches and seizures were conducted without a warrant, without probable cause and without any justifying exigent circumstances, (2) there was no probable cause for his warrantless arrest, and (3) the warrant to search the apartment lacked probable cause.  (Doc. No. 20.)  With respect to the search of the apartment, Defendant has offered no testimony or other evidence to establish any threshold showing of his reasonable expectation of privacy in those premises.  Accordingly,

---

[3]  Defendant Maya-Villa's motion to suppress confessions or statements in the nature of a confession is moot.  The Government asserts that he made no such post-arrest statements.  (Doc. No. 46.)  Maya-Villa's motion for severance of the Defendants is also moot, Defendant Cruz-Cruz having pled guilty after the motion was filed.  (Doc. No. 44.)

the only search at issue is that of Maya-Villa's person, which was conducted pursuant to his arrest. The question thus becomes solely whether there was probable cause for that arrest.

In general, probable cause does not require absolute certainty, as it "demands no more than a proper 'assessment of probabilities in particular factual contexts.'" Illinois v. Rodriguez, 497 U.S. 177, 184 (1990). A warrantless arrest is valid if the facts and circumstances warrant the belief that the defendant committed the offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). To make a warrantless arrest, probable cause "requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity." United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005). Thus the standard that the jury must apply at trial does not have to be met to establish probable cause to arrest. Id. (clarifying that probable cause for warrantless arrest imposes less onerous standard than that governing conviction).

Here, undercover officers observed Maya-Villa participate in a pre-arranged controlled purchase of one kilogram of cocaine. On these facts, the arresting officers could easily conclude that Maya-Villa was a knowing participant in the sale of cocaine. Probable cause was undermined neither by the fact that officers had conducted no surveillance of Maya-Villa before the day of his arrest, nor by the fact that there were no phone calls or other direct contact between Maya-Villa and the undercover officer. Any possible question as to whether there is proof beyond a reasonable doubt that, for example, Maya-Villa knew the substance in the shoebox was cocaine is an issue only for the jury at trial. In short, the police possessed the requisite probable cause to arrest Defendant without a warrant.

The resulting search incident to his arrest was therefore valid. There is thus no basis to suppress the fact that officers found on him a key to the apartment that was then searched.

## III.    ORDER

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.     Defendant's motion to suppress any physical evidence obtained from a search or seizure (Doc. No. 20) be DENIED;

2.      Defendant's motion to suppress any confessions (Doc. No. 21) be DENIED AS MOOT; and

3.     Defendant's motion for severance of defendants (Doc. No. 38) be DENIED AS MOOT.

Dated:  August 11, 2008

   s/ Susan Richard Nelson     

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by August 26, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.